[No. D057138. Fourth Dist., Div. One. Dec. 13, 2012.]

IN RE INSURANCE INSTALLMENT FEE CASES.

1396

**COUNSEL**

Coughlin Stoia Geller Rudman & Robbins; Robbins Geller Rudman & Dowd, John J. Stoia, Jr., Pamela M. Parker, Rachel L. Jensen, Amanda M. Frame, Kevin K. Green; Blood Hurst & O'Reardon, Timothy G. Blood, Leslie E.

Hurst, Thomas J. O'Reardon II; Freedman, Boyd, Daniels, Hollander & Goldberg, David Freedman; Peifer, Hanson & Mullins, Charles R. Peifer, Robert E. Hanson; Myers, Oliver & Price, Floyd. D. Wilson; Robbins Umeda, Brian J. Robbins; Alan Konrad; Eaves & Mendenhall and John M. Eaves for Plaintiffs, Appellants and Cross-respondents.

Sedgwick, Detert, Moran & Arnold, Kevin Dunne, Maria Louise Cousineau; Sedgwick, Victoria Collman Brown; Hogan Lovells, Vanessa O. Wells; Skadden, Arps, Slate, Meagher & Flom, James P. Schaefer, Jeffrey W. McKenna and Salezka Aguirre for Defendant, Respondent and Cross-appellant.

---

## OPINION

**O'ROURKE, J.**—Plaintiffs in a tentatively certified class action[1] against defendant State Farm Mutual Automobile Insurance Company (State Farm) appeal from a judgment of dismissal entered after the trial court sustained State Farm's demurrer to plaintiffs' fourth amended complaint (the complaint) without leave to amend. The members of the putative plaintiff class are insureds of State Farm who pay the premiums on their automobile insurance policies in monthly installments. The complaint includes causes of action for breach of contract, violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL), and related causes of action based on allegations that State Farm unlawfully charges the class members a service charge (also referred to herein as an installment fee) to cover its installment billing and collection costs without specifying the service charge as additional premium on its policies as required by Insurance Code sections[2] 381 and 383.5, and without obtaining prior approval from the Insurance Commissioner for that additional premium as required by section 1861.01 et seq.[3] Plaintiffs contend the complaint sufficiently pleads causes of action for breach of contract and violation of the UCL.

State Farm appeals from a postjudgment order granting plaintiffs' motion to tax costs of $713,463.72 that State Farm sought to shift to plaintiffs. State Farm incurred the costs in providing notice to putative class members that

---

[1] The trial court issued a minute order granting class certification as to breach of contract and unjust enrichment claims in plaintiffs' third amended complaint but denied certification as to other claims, and directed plaintiffs' counsel to "prepare a ruling." However, at plaintiffs' request, the court stayed entry of its final certification order to allow plaintiffs to seek leave to file a fourth amended complaint.

[2] All subsequent statutory references are to the Insurance Code unless otherwise specified.

[3] Section 1861.01, subdivision (c), provides that "insurance rates subject to this chapter must be approved by the commissioner prior to their use."

plaintiffs sought discovery of their contact information and installment fee payment information.[4] We affirm the judgment and reverse the postjudgment order.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal of a judgment of dismissal entered after the sustaining of a demurrer without leave to amend, we accept as true all the material allegations of the complaint, reasonable inferences that can be drawn from those allegations, and facts that may properly be judicially noticed. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 422 [8 Cal.Rptr.2d 869].) However, we do not accept as true contentions, deductions, or conclusions of fact or law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)[5]

The relevant facts alleged in the complaint are few and largely undisputed.[6] The representative plaintiffs and other State Farm policyholders who pay for their insurance in monthly installments are billed a service charge that is not included in the contract price specified in the policy. The installment fee is $3 per month for class members who receive a paper bill and do not return payment by automatic deduction from a bank account, $2 per month for class members who receive a paper bill but pay by automatic deduction from a bank account, and $1 per month for class members who receive no paper billing and pay by automatic deduction from a bank account. The installment fee is intended to cover State Farm's installment billing and collection costs. However, plaintiffs allege that State Farm also includes those costs in the prices it charges for its policies, but does not disclose that fact to its customers. As a result, plaintiffs and the class members allegedly are charged twice for the installment billing and collection costs.

---

[4] State Farm also filed a notice of appeal from the judgment for the purpose of obtaining review of two related prejudgment orders that required it to bear the costs in question.

[5] State Farm requests that we take judicial notice of three items: (1) a "Stipulated Request for Dismissal With Prejudice" filed in an action by State Farm against the Insurance Commissioner challenging an opinion letter the Commissioner issued in *Williams v. Interinsurance Exchange of the Automobile Club* (Super. Ct. San Diego County, 2007, No. GIC836845) (see fn. 9, *post*); (2) a "Motion and Memorandum To Amend Class Action Complaint to Name One Additional Class Representative and To Amend the Class Definition," filed in the trial court in a New Mexico action entitled *Nakashima v. State Farm Mutual Automobile Insurance Company* (No. CV-2004-00908); and (3) a "Memorandum Opinion and Order" granting summary judgment in favor of State Farm in the New Mexico action. We deny State Farm's request for judicial notice on the ground the materials in question are unnecessary to our resolution of the appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29 [79 Cal.Rptr.3d 489].)

[6] The complaint consists mainly of plaintiffs' legal argument.

The premium for a State Farm policy is specified in the policy declarations page as the "Total Premium" due for the policy period. Plaintiffs allege the policy contemplates that the policyholder may pay the Total Premium in installments as long as the Total Premium is paid before the end of the current policy period. The installment fee at issue is not specified in the declarations page or anywhere else in the policy. Plaintiffs allege the installment fee is "additional premium" that State Farm misrepresents as being a mandatory service charge. They also allege the State Farm payment plan (SFPP) agreement, which insureds enter into to pay in monthly installments, is an illegal contract that cannot be used to modify the insurance contract.[7] Plaintiffs characterize State Farm's charging the installment fee as a misrepresentation "that the installment 'service charges' were due and owing, even though they were not."

The complaint includes the following six causes of action based on the allegedly unlawful installment fee: first cause of action for breach of contract, second cause of action for violation of the UCL, third cause of action for unjust enrichment, fourth cause of action for fraud and deceit, fifth cause of action for negligent misrepresentation, and sixth cause of action for declaratory relief. On appeal, plaintiffs challenge only the sustaining of State Farm's demurrer without leave to amend as to the first cause of action for breach of contract and second cause of action for violation of the UCL.

In the first cause of action, plaintiffs allege that State Farm breaches the express terms of the insurance contract, as well as statutes that are made part of the contract under California law, by demanding more premium in the form of the installment fee than the total premium specified on the declarations page of the insurance contract. State Farm also allegedly breaches the insurance contract by double-charging for its billing and collection costs through both the total premium and the installment fee.

In sustaining the demurrer without leave to amend as to the breach of contract cause of action, the court rejected plaintiffs' argument that the language of State Farm's policy itself (apart from the SFPP) allows for the payment of the premium in installments and ruled that the SFPP is not an illegal premium, but rather "pays for the convenience of paying monthly and covers a separate payment plan apart from the issuance of insurance coverage." The court further ruled that "the allegations do not support a cause of action under the UCL, [or causes of action for] fraud or negligent misrepresentation. A fraud claim must be based on alleged misrepresentation or

---

[7] Plaintiffs specifically allege that "State Farm impliedly represented that the SFPP Agreement was a legal and legitimate means to modify the [insurance] contract," and that "State Farm omitted to inform plaintiffs and Class members that by law and by its own contract terms, the SFPP Agreement was an illegal contract and void or unenforceable and could not be used to modify or change the insurance contract."

omission of fact. [Citation.] The misrepresentations alleged are opinions and legal conclusions, not facts." The court also found that the alleged misrepresentations were true and that the representative plaintiffs failed to sufficiently plead reliance because they alleged that they paid their premiums "in installments because their finances required them to do so."

## DISCUSSION

### *PLAINTIFFS' APPEAL*

#### I. *Cause of Action for Breach of Contract*

Plaintiffs contend the complaint sufficiently pleads that State Farm breaches its insurance contract (policy) by requiring its policyholders who pay monthly installments to enter into the SFPP agreement and pay an installment fee. Plaintiffs argue that requiring the installment fee is a breach of contract because, as alleged in the complaint, (1) the installment fee is additional premium that is not specified on the policy's declaration page as required by sections 381 and 383.5;[8] (2) the policy already allows for installment payments without a separate agreement; (3) regardless of whether the installment fee is premium, the policy does not permit State Farm to impose the installment fee without amending the policy by endorsement to include that additional charge; and (4) policyholders who pay in installments are double-charged for State Farm's cost of billing and collecting installment payments.

#### A. *The installment fee is not premium*

██ As this court has noted, "[i]t is commonly understood that a premium is the amount paid for certain insurance for a certain period of coverage." (*Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1230 [56 Cal.Rptr.3d 421], fn. omitted (*Auto Club*); see *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1324 [90 Cal.Rptr.3d 589] (*Troyk*).) ██ In both *Auto Club* and *Troyk*, this court, in

---

[8] Section 381, subdivision (f) requires that an insurance policy specify either "(1) [a] statement of the premium, or [¶] (2) If the insurance is of a character where the exact premium is only determinable upon the termination of the contract, a statement of the basis and rates upon which the final premium is to be determined and paid." Section 383.5 states: " 'Document,' as used in this section, means a policy or a certificate evidencing insurance under a master policy. The policy or certificate shall conform to Section 381 and shall segregate the premiums charged for each risk insured against. The certificate, in lieu of specifying the risks insured against, may designate them by name or by description. 'Document' also includes the applicable policy form and a subsequently issued declarations page conforming to Section 381 or an endorsement."

considering whether the insurance installment fees at issue in those cases were premium within the meaning of section 381, subdivision (f), applied the rule that when the language of a statute is clear and unambiguous, there is no need for construction.

In *Auto Club*, the insurer, Interinsurance Exchange of the Automobile Club (Exchange), gave policyholders the option of paying premiums for automobile insurance in nine monthly installments, subject to additional charges for interest at a rate of about 18 percent per year. (*Auto Club, supra*, 148 Cal.App.4th at p. 1222.) The *Auto Club* court concluded that "the fee Exchange charges for making payments of the annual premium in installments is interest for the time value of money and the plain and ordinary meaning of the term 'premium,' as used in section 381, subdivision (f), does *not* include interest charged for the time value of money." (*Id.* at p. 1230.) The court explained: "It is commonly understood that a premium is the amount paid for certain insurance for a certain period of coverage. For example, in this case Exchange charged [the plaintiff] an annual premium of $986 for renewal of her automobile insurance coverage for the period from January 2004 through January 2005. As section 480 confirms, a premium is to be paid on commencement of the period of insurance coverage. Section 480 provides: 'An insurer is entitled to payment of the premium as soon as the subject matter insured is exposed to the peril insured against.' Therefore, in the case of an annual period of renewal of insurance coverage, an insurer is entitled to payment of the annual premium in one lump sum at the beginning of the policy period. (§ 480.) To the extent an insurer provides an insured with the option of paying that one lump sum in installments of partial premium payments together with interest on the unpaid premium balance, the interest charged for the time value of money for the option of making payments of premium over time is *not* considered part of the premium paid for insurance coverage." (*Auto Club, supra*, 148 Cal.App.4th at pp. 1230–1231, fns. omitted.) Accordingly, the *Auto Club* court concluded that the interest charged by Exchange for the use of its installment payment option was not required to be disclosed in the declarations page or elsewhere in its insurance policy. (*Id.* at p. 1231.)

The same panel of this court considered a different type of insurance installment fee in *Troyk*, a certified class action. The insurer in *Troyk*, Farmers Group, Inc., and related entities (collectively Farmers), offered automobile insurance with terms of either six months or one month. The premium for a six-month term was payable in either one lump sum or two installments, but if the insured chose a one-month term, Farmers converted "its six-month policy into a one-month policy by issuing an endorsement called the 'Monthly Payment Agreement' . . . ." (*Troyk, supra*, 171 Cal.App.4th at pp. 1315–1316.) To obtain the one-month policy, the insured was required to enter into an agreement with Prematic Service Corporation (Prematic), a

subsidiary of Farmers, under which Prematic would send a monthly premium bill to the insured and, on receipt of the premium payment plus a five dollar service charge, forward the payment less the service charge to Farmers. (*Ibid.*)

The *Troyk* court concluded that "the clear and unambiguous meaning of the term 'premium,' as used in section 381, subdivision (f), includes a service charge imposed for payment in full of the stated insurance premium for a one-month term policy." (*Troyk, supra,* 171 Cal.App.4th at pp. 1323–1324.) The court reasoned that "[b]ecause section 381 'presumably is a consumer protection statute' [citation], the meaning of 'premium,' as used in section 381, subdivision (f), is interpreted from the perspective of the consumer (i.e., the insured). In the circumstances of this case, Troyk and the other class members were *required* to pay a service charge in addition to the stated premium to obtain and pay for a one-month term of insurance coverage. They could not obtain or pay for that one-month term policy by paying only the premium stated on the declarations page or elsewhere in the policy. Therefore, from the *insureds'* perspective in this case, 'premium,' for purposes of section 381, subdivision (f), is the total amount the insureds were required to pay to obtain insurance coverage for a one-month term (i.e., the stated premium plus the service charge imposed for payment in full of that stated premium)." (*Troyk, supra,* at p. 1324, fns. omitted.)

The *Troyk* court further explained: "The service charges [Farmers] required Troyk and the other class members to pay were *not* imposed for the privilege of paying the premium for a six-month term policy in monthly installments or otherwise over time. Rather, as shown by the Monthly Payment Agreement endorsement . . . , the policy issued to the class members was for a one-month term, not a six-month term. . . . The fact the Monthly Payment Agreement provided that class members had the right to extend the term of the one-month policy 'for successive monthly periods if the premium is paid when due' supports, rather than weighs against, our conclusion. That language shows 'the premium' is payable for the policy's one-month term. That agreement also provided: '*The premium* is due no later than on the expiration date of the then current monthly period.' (Italics added.) That language likewise shows 'the premium' is payable for the policy's one-month term. Furthermore, we note the Monthly Payment Agreement does not use the term 'installment' or any other language that would suggest an insured will be paying each month only part of a greater premium for a period of coverage longer than one month (e.g., six months)." (*Troyk, supra,* 171 Cal.App.4th at p. 1326.) The court concluded that "the policy documents are reasonably susceptible of only one interpretation—that each class member had a policy for a *one-month*, and not a six-month, term." (*Id.* at p. 1327.)

State Farm's installment fee at issue in the present case differs from the one at issue in *Troyk* in a key respect: State Farm's fee is charged for making a true installment payment on the total premium owed for a *six-month term* of insurance coverage, whereas the installment fee at issue in *Troyk* was part of the total payment due for a *one-month* term of coverage. The installment fee here is paid under a separate agreement (the SFPP) between the insured and State Farm for the benefit of being able to pay the total amount owed for a *six-month* period of insurance in monthly installments instead of in a single lump sum; it is not part of the amount paid for the six-month term of insurance coverage, as shown by the fact that a policyholder who pays the six-month premium in one lump sum does not pay the installment fee. Because the installment fee is consideration for a benefit separate from the insurance rather than an " 'amount paid for certain insurance for a certain period of coverage' " (*Troyk, supra*, 171 Cal.App.4th at p. 1324), it is not premium.[9]

■ In *Nakashima v. State Farm Mutual Automobile Insurance Company* (2007) 141 N.M. 239 [153 P.3d 664] (*Nakashima*), a New Mexico appellate court deciding the same issue (whether the installment fee paid under State Farm's SFPP is additional premium) similarly concluded that the installment fee is not premium but rather is consideration for a benefit separate from the insurance coverage provided in exchange for premium payment. The *Nakashima* court stated: "The payment plan agreement, or second contract, constituted a separate agreement between the parties with respect to an alternative way to pay the policy premium. In terms of consideration, [State Farm] gave up its right to obtain the payment of premium in a lump sum, whereas Plaintiff obtained the right to pay her premium in installments in exchange for a fee. We therefore conclude that the payment plan agreement

---

[9] Plaintiffs cite several California cases (*Metropolitan Life Ins. Co. v. State Bd. of Equalization* (1982) 32 Cal.3d 649 [186 Cal.Rptr. 578, 652 P.2d 426]; *Allstate Ins. Co. v. State Board of Equalization* (1959) 169 Cal.App.2d 165 [336 P.2d 961]; *Interinsurance Exchange v. State Bd. of Equalization* (1984) 156 Cal.App.3d 606 [203 Cal.Rptr. 74]), two Attorney General opinions (9 Ops.Cal.Atty.Gen. 257 (1947); 58 Ops.Cal.Atty.Gen. 768 (1975)), and an Insurance Commissioner's opinion letter issued by California's Department of Insurance (DOI) in 2006 supporting their position that installment payment fees charged by insurance companies are premium. Following *Auto Club* and *Troyk*, we do not rely on these authorities in deciding whether the installment fees at issue in this case are premium within the meaning of section 381, subdivision (f). We do not rely on *Allstate* and the cases approving or following it or the Attorney General opinions because those cases and opinions involve the interpretation of the term "gross premium" for purposes of insurance company *taxation*, which is a different context than that presented by this case. (See *Troyk, supra*, 171 Cal.App.4th at p. 1329.) We do not rely on or defer to the DOI's 2006 opinion because the meaning of the term "premium" under section 381, subdivision (f), is a question of law for our independent determination, and the DOI has not issued a formal regulation or had a long-standing opinion on the issue. (*Auto Club, supra*, 148 Cal.App.4th at pp. 1235–1237; *Troyk, supra*, 171 Cal.App.4th at pp. 1328–1329.)

was a second contract between the parties supported by adequate consideration." (*Id.*, 153 P.3d at p. 669.) Accordingly, the *Nakashima* court concluded that "the installment fees are not consideration for a contract of insurance but, instead, cover the expense of allowing policyholders to pay their premiums in installments. . . . [¶] . . . Because individuals are in no way obligated to pay the installment fees, aside from their own financial and/or personal preference, the installment fees cannot be considered consideration for the procurement of insurance and are therefore not premium." (*Ibid.*) The *Nakashima* court further reasoned that installment fees were not premium under the language of State Farm's policy because "insurance rates are associated with the transfer of risk. . . . Installment fees, on the other hand, are not associated with any sort of transfer of risk but, instead, cover the costs associated with a payment plan." (*Nakashima, supra*, 153 P.3d at p. 670.)

 We agree with the *Nakashima* court's reasoning and likewise conclude that the installment fee paid under the SFPP is consideration for a benefit separate from the insurance and is paid under an agreement separate from the policy. Therefore, the installment fee is not an insurance premium or rate that must be stated on the declarations page or elsewhere in the policy under sections 381 and 383.5, or approved by the Insurance Commissioner under section 1861.01 et seq.[10]

### B. *The policy itself does not allow for installment payments*

Plaintiffs contend that State Farm's charging policyholders the installment fee under the SFPP is a breach of the insurance contract because the policy already allows for installment payments without a separate agreement under the section entitled "When And Where Coverage Applies," which states: "The coverages *you* chose apply to accidents and *losses* that take place during the policy period. [¶] The policy period is shown under 'Policy Period' on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page."

Plaintiffs argue that the sentence "Payments must be made on or before the end of the current policy period" means that an insured is not required to pay the total premium in advance in one lump sum, but is covered as long as the premium for the *current* policy period is paid before the end of the current policy period. Consequently, plaintiffs argue, requiring insureds to enter into

---

[10] The *Troyk* court acknowledged this critical distinction between the installment fees at issue in *Troyk* and the fees at issue here by distinguishing *Nakashima* as a case that "involved *true installment payments of premium.*" (*Troyk, supra*, 171 Cal.App.4th at p. 1328, italics added.)

a separate agreement to pay in installments and imposing additional service charges for that option violates the policy's terms.

■ "[I]nterpretation of an insurance policy is a question of law. [Citation.] ■ The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) ■ "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]' [Citations.] ■ A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists." (*Id.* at pp. 18–19.) Further, "[a]n agreement is not ambiguous merely because the parties (or judges) disagree about its meaning. Taken in context, words still matter." (*Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 356 [116 Cal.Rptr.3d 860]; see *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 454 [10 Cal.Rptr.3d 617] [insurance policy must be interpreted as a whole and in context, and an ambiguity is not necessarily found in the fact a word or phrase isolated from its context is susceptible of more than one meaning].)

Ambiguity in an insurance policy is resolved by construing the ambiguous provisions in the sense the insurer believed the insured understood them at the time the contract was formed. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 [9 Cal.Rptr.3d 701, 84 P.3d 385]; Civ. Code, § 1649.) This rule protects both the subjective beliefs of the insurer and the objectively reasonable expectations of the insured, and only if its application does not resolve the ambiguity do we construe the ambiguous language against the insurer. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264–1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

Bearing in mind that language in a contract must be interpreted as a whole and in context and cannot be found to be ambiguous in the abstract, we conclude that the "When And Where Coverage Applies" section unambiguously does not allow an insured to pay the premium for a current policy

period in installments. Read in isolation, the sentence "Payments must be made on or before the end of the current policy period," could be interpreted as referring to premium payments for the current policy period. However, because the preceding sentence informs the insured that the policy period is shown "on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium," (underscoring added), the word "Payments" that immediately follows clearly refers to payments of renewal premiums for successive policy periods rather than payment of the premium for the current policy period.

Plaintiffs' interpretation is not reasonable because it would allow policyholders to make installment payments despite the absence of contract language expressly addressing such payments and related terms such as the amount, timing, or number of installment payments the insured is entitled to make. Under plaintiffs' interpretation, these important contractual terms, which an insured would reasonably expect to be expressly stated in the policy, would be within the sole discretion of the insured, as long as the insured paid the entire premium amount before the end of the term for that premium. A policyholder could make installment payments of varying amounts at random times and could pay the first installment at some point after the six-month policy period begins to run, thereby receiving the benefit of insurance coverage from the beginning of the policy period to the time he or she makes the first installment payment without having paid *any* amount for coverage. Requiring State Farm to provide coverage without payment in that circumstance would contravene section 480, which provides that "[a]n insurer is entitled to payment of the premium as soon as the subject matter insured is exposed to the peril insured against."

Other courts construing the "When And Where Coverage Applies" section in State Farm's policy have also concluded that the phrase "[p]ayments must be made on or before the end of the current policy period," *read in context*, unambiguously refers to payments of renewal premium for successive policy periods rather than payments of premium for the current policy period. Following the rule that courts apply the plain meaning of contract language in interpreting the terms of a contract, the *Nakashima* court stated: "We believe that 'payments' in the plural refers to the possibility of successive policy periods mentioned in the previous sentence and not the possibility of multiple payments within a single policy period. . . . [T]he term 'payments' in this context means that each payment for each renewal period must be made before the end of the current policy period. We therefore disagree with Plaintiff's assertion that the term 'payments' in this context allows for the payment of premium in installments." (*Nakashima, supra*, 153 P.3d at p. 668.)

The South Carolina Court of Appeals in *Stringer v. State Farm Mutual Automobile Insurance Company* (2009) 386 S.C. 188 [687 S.E.2d 58] (*Stringer*) reached the same conclusion. The plaintiff in *Stringer* paid the full premium for a six-month automobile policy to State Farm, but a policy adjustment during the policy period caused his premium to increase and State Farm sent him a bill for the premium increase with notice that the policy would be cancelled unless he paid the increase on or before a specified date. The notice stated that payment after the due date would reinstate the policy, but there would be no coverage for the period between cancellation and reinstatement. (*Id.*, 687 S.E.2d at p. 59.) The plaintiff was involved in an automobile accident with an uninsured driver two days after his policy was cancelled, but he paid the premium increase after the accident and made a claim under the policy. State Farm denied the claim on the ground the policy was not in effect when the accident occurred. (*Ibid.*) The trial court ruled there was uninterrupted coverage under the policy, based in part on the policy's provision that " '[p]ayments must be made on or before the end of the current policy period.' " Like plaintiffs here, the trial court in *Stringer* construed that sentence to mean the insured was entitled to uninterrupted coverage as long as he paid the premium increase by the end of the current policy period. (*Id.*, 687 S.E.2d at p. 60.)

The *Stringer* court concluded the "trial court erred in isolating the statement '[p]ayments must be made on or before the end of the current policy period,' from its proper context. . . . In proper context, this sentence clearly refers to renewal and provides that payments of renewal premiums must be made before the end of the current policy period. This sentence does not contemplate whether the insured's payment of an additional premium before the expiration of the current policy period provides for uninterrupted coverage." (*Stringer, supra*, 687 S.E.2d at pp. 60–61.)

Even if we were to conclude that the sentence " '[p]ayments must be made on or before the end of the current policy period' " is ambiguous, we would affirm the trial court's construction of the sentence. As noted, we must construe any ambiguity in the policy language in the sense State Farm believed the insured would understand it at the time of contract formation. (*E.M.M.I. Inc. v. Zurich American Ins. Co., supra*, 32 Cal.4th at p. 470; Civ. Code, § 1649.) Reading the language at issue in context, we find no reason to doubt that State Farm believed an insured entering into the insurance contract would understand the sentence " '[p]ayments must be made on or before the end of the current policy period' " to mean that the "renewal premium" for a "successive [period] of six months" referenced in the preceding sentence must be paid before the end of the current policy period. We interpret the sentence accordingly, and conclude that our interpretation is both within the objectively reasonable expectations of the insured and is consistent with State

Farm's right under section 480 to receive "payment of the premium as soon as the subject matter insured is exposed to the peril insured against."

Plaintiffs argue that our interpretation of the language in question renders meaningless the following language in the policy's "Cancellation" section: "Unless we mail or deliver a notice of cancellation to *you* within 59 days of the policy effective date, we will not cancel *your* policy before the end of the current policy period unless: [¶] a. *you* fail to pay the premium when due."[11] Plaintiffs construe this provision to mean that a policy may be in effect for 59 days without all premium payments having been made, and argue that if the only payment option under the policy is payment in full in advance of the policy period for which the payment is made, the provision makes no sense.[12]

Our interpretation of the language at issue in the "When And Where Coverage Applies" section does not render the cancellation provision in question meaningless because premium amounts may become due during a policy period in at least two different ways. The policy provides that the premium is based on information State Farm has received from the insured or other sources and may be decreased or increased if the information is incorrect, incomplete, or changes during the policy period. Thus, as *Stringer* illustrates, State Farm may cancel a policy during a policy period if the insured fails to pay a premium increase by a specified due date. The allegation in the complaint that State Farm gives policyholders the option of paying the premium in two installments also gives meaning to the provision that State Farm will cancel a policy before the end of the policy period for failure to pay a premium when due.[13] If a policyholder who has opted to pay the premium in two installments fails to pay the second installment when due, State Farm presumably would cancel the policy for "failure to pay the premium when due," as it did in *Stringer* when the insured failed to pay the premium increase when due. (*Stringer, supra*, 687 S.E.2d at p. 61.)

---

[11] A related provision in the "Cancellation" section states: "After the policy has been in force for more than 59 days, any notice of cancellation will be mailed or delivered to *you* at least: [¶] a. 10 days before the cancellation effective date if the cancellation is because *you* did not pay the premium."

[12] This cancellation provision makes no sense under plaintiffs' view that the "When and Where Coverage Applies" section of the policy gives the insured until the end of a policy period to pay the full premium for that period. Under that view, State Farm could never cancel a policy "before the end of the current policy period" for failure to pay the premium when due because the premium would not be due until the end of the policy period.

[13] Plaintiffs allege in the complaint that "State Farm failed to tell plaintiffs and Class members that other State Farm insureds, such as those who paid under its '50/50 plan' in two installments, pay in installments without a separate State Farm Payment Plan ('SFPP') Agreement or any other agreement outside of the insurance contract and without State Farm asserting that the installment pay violates the contract's payment terms."

The policy itself does not provide policyholders the option of paying premiums in installments. Therefore, State Farm does not breach the insurance contract by requiring that policyholders opting to pay in monthly installments enter into the separate SFPP agreement and pay an installment fee.

C. *The policy does not prohibit State Farm from charging the installment fee without amending the policy*

Plaintiffs contend that regardless of whether the installment fee is premium, the policy does not permit State Farm to impose the installment fee without amending the policy by endorsement to include that additional charge. As alleged in the complaint, State Farm's standard form policy contains an integration clause that states: "[T]his policy contains all of the agreements between *you* and us or any of our agents." The policy also provides that it may be changed only by an endorsement issued by State Farm or revision to give broader coverage without charge. Thus, plaintiffs argue, State Farm breaches the insurance contract by imposing the installment fee as a condition of receiving insurance without amending the policy by endorsement.

The significance and effect of the policy's integration clause is that under the parol evidence rule, the policy may not be contradicted by evidence of a prior or contemporaneous collateral agreement. "When the parties to an agreement incorporate the complete and final terms of the agreement in a writing, such an integration in fact becomes the complete and final contract between the parties. Such a contract may not be contradicted by evidence of purportedly collateral agreements. . . . The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, both oral and written, are excluded." (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14 [22 Cal.Rptr.2d 229].) However, "[t]he parol evidence rule precludes extrinsic evidence of *prior* or *contemporaneous* agreements that contradict, vary, or add to an integrated writing—it does not relate to *future* agreements and does not bar extrinsic evidence that proves that the parties *subsequently* modified their *integrated* writing." (*Beggerly v. Gbur* (1980) 112 Cal.App.3d 180, 188 [169 Cal.Rptr. 166].)

Here, there is no issue regarding a prior or contemporaneous agreement that contradicts the integrated insurance contract (i.e., policy); the issue is whether the separate SFPP agreement—a *future* agreement with respect to the policy—*changes* the policy in a way that, under its express terms, may only be accomplished through an endorsement that amends the policy. The *Nakashima* court decided this issue in favor of State Farm, stating: "[A]n

integration clause only covers antecedent and contemporaneous agreements; it does not foreclose the possibility of future agreements. [Citation.] Moreover we reject Plaintiff's argument that the payment plan agreement should be considered an antecedent agreement because Plaintiff has renewed her policy numerous times and each renewal contains the same integration language. We observe that Plaintiff did not have to reapply for insurance coverage after each six-month period; instead, she 'renewed' her existing policy. Such renewals are therefore best characterized as extensions of the original policy agreement. [Citation.] Similarly, we note that Plaintiff did not have to sign a new payment plan agreement each time she renewed her policy. We therefore do not believe that the integration clauses within these policy renewals somehow prevented the installment payment plan from constituting *a separate agreement between the parties*. Moreover, it appears the method of payment is separate from the coverage and cost of coverage contained in the policy. Accordingly, an agreement regarding how the premium is to be paid would not be covered by the integration clause." (*Nakashima, supra*, 153 P.3d at p. 668, italics added.)

Although the trial court's written order on State Farm's demurrer did not address plaintiffs' breach of contract theory based on the policy's integration clause and provision regarding policy changes by endorsement, at oral argument on the demurrer the court stated, "As far as the fully integrated [contract] issue, while I didn't articulate it in [the written tentative ruling], I don't think that was a breach of contract . . . because [the SFPP] was a separate agreement."

We agree with the trial court and the *Nakashima* court that the SFPP agreement is a separate agreement from the insurance contract, and we agree with the *Nakashima* court that it was *future* to the insurance contract and thus not barred by the policy's integration clause. The SFPP agreement provides the insured a benefit separate from the insurance and is supported by consideration separate from the policy premium; it does not change the policy. Consequently, it was not required under terms of the policy to be made a part of the policy through an endorsement.

### D. Policyholders who pay in installments are not double-charged for State Farm's cost of billing and collecting installment payments

Plaintiffs contend State Farm breached the insurance contract by double-charging for the cost billing and collecting installment payments. The complaint alleges that the premium State Farm charges its policyholders includes billing and collection costs and that State Farm therefore breaches the insurance contract "by demanding additional charges beyond the amount already collected from its insureds for the purpose of covering the cost of installment pay."

The allegation that State Farm double-charges for its billing and collection costs by charging the installment fee in addition to the premium appears to be based on the allegation that the policy already allows the insured to pay the premium in installments, as indicated by plaintiffs' argument in their opening brief that "the policy does contemplate installment payments, and thus the rate paid for the policy presumably already reflects, at least in part, State Farm's costs incurred in collecting that rate in installments." In light of our conclusion that the policy does not provide for installment payments, there is no basis for the conclusory allegation that State Farm includes its cost of billing and collecting in installments in the approved price it charges for its policies.

■ To the extent plaintiffs' double-charge theory is *not* based on the view that the policy allows for installment payments, their position essentially is that the premium charged for insurance coverage is adequate consideration for the additional benefit of being able to pay the premium in installments. However, the policy does not provide that benefit, and past consideration given for a promise under an existing contract cannot support a separate promise in excess of the promisor's existing contractual obligations. (*Passante v. McWilliam* (1997) 53 Cal.App.4th 1240, 1247 [62 Cal.Rptr.2d 298]; *Leonard v. Gallagher* (1965) 235 Cal.App.2d 362, 373 [45 Cal.Rptr. 211].) Accordingly, the insured's payment of the premium as consideration for the benefit of insurance coverage cannot serve as consideration for a later and separate promise to allow the premium to be paid in monthly installments.

■ Additionally, "consideration must result from a bargain." (*Passante v. McWilliam, supra*, 53 Cal.App.4th at p. 1247.) That is, "the consideration for a promise must be an act or a return promise, *bargained for and given in exchange for the promise*." (*Simmons v. California Institute of Technology* (1949) 34 Cal.2d 264, 272 [209 P.2d 581], italics added.) Because the consideration given by State Farm under the SFPP agreement (allowing the insured to pay the premium in installments) in exchange for the consideration given by the insured (payment of the installment fee) was not bargained for *in the formation of the insurance contract*, the premium paid by the insured for insurance coverage cannot serve as consideration for the benefit of being able to pay the premium in installments. Accordingly, State Farm's charging the installment fee for that benefit under the separate SFPP agreement does not constitute a breach of the insurance contract.

The trial court did not err in sustaining State Farm's demurrer to plaintiffs' cause of action for breach of contract without leave to amend.

## II. *Cause of Action for Violation of the UCL*

 Our determination that the complaint does not state a cause of action for breach of contract on any of the theories advanced by plaintiffs is also dispositive of plaintiffs' cause of action for violation of the UCL. Business and Professions Code section 17200, part of the UCL, defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." Thus, there are three varieties of unfair competition under the statute: practices that are unlawful, unfair or fraudulent. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312 [93 Cal.Rptr.3d 559, 207 P.3d 20].)

Plaintiffs' claim under the "unlawful" prong of the UCL is premised on the theory that the installment fee in question is premium within the meaning of section 381, subdivision (f), and therefore State Farm violates sections 381 and 383.5 by failing to specify the installment fee as additional premium on the policy's declaration page, and violates section 1861.01 et seq. by failing to obtain prior approval from the Insurance Commissioner for that additional premium.[14] Plaintiffs' claim of unlawful conduct fails in light of our conclusion that, as a matter of law, the installment fee is not premium and therefore is not statutorily required to be specified as such in the policy or approved by the Insurance Commissioner.

 To state a cause of action for violation of the UCL under the "fraudulent" prong, a plaintiff must show that members of the public are likely to be deceived. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197 [197 Cal.Rptr. 783, 673 P.2d 660], superseded by statute on another point as stated in *Californians For Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207]; *George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1131–1132 [135 Cal.Rptr.3d 480].) The alleged deception in this case essentially consists of State Farm not communicating plaintiffs' legal position regarding the installment fees to its policyholders who paid premiums in installments. Plaintiffs allege in the complaint that State Farm misrepresented to plaintiffs and class members that the installment fee "was due and owing because they paid in installments, but failed to disclose that it was not owed, and was in fact an illegal extra-contractual charge." Plaintiffs further allege: "State Farm omitted to inform plaintiffs and Class members that by law and by its own contract terms, the SFPP Agreement was an illegal contract and void or unenforceable and could not be used to modify or

---

[14] Plaintiffs also allege that by charging the installment fee, State Farm violates common law and various other statutes, including Civil Code section 1750 et seq. (Consumers Legal Remedies Act), Civil Code sections 1572 (defining actual fraud), 1573 (defining constructive fraud), and 1710 (defining deceit). These allegations of unlawfulness are also based on the contention that the installment fee is additional premium.

change the insurance contract. [¶] . . . State Farm misrepresented to plaintiffs and Class members that the monthly 'service charges' are different from or separate from premium. In fact, the 'service charges' are premium."

As we discussed, however, the installment fees are not premium and charging them is not illegal or a breach of the insurance contract or otherwise improper. The installment fee is paid under the SFPP agreement, which is separate from the insurance contract and is adequately supported by consideration on both sides—i.e., State Farm gives up its right to obtain the payment of premium in a lump payment and the insured obtains the right to pay the premium in installments in exchange for a fee. There is nothing misleading or deceptive about State Farm's charging the installment fee under the SFPP agreement. Plaintiffs have not pled a viable claim under the "fraudulent" prong of the UCL because they do not allege any conduct by State Farm that was likely to deceive members of the public.

Likewise, plaintiffs have not stated a claim under the "unfairness" prong of the UCL. In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*), the California Supreme Court addressed the meaning of "unfairness" in the context of an action under the UCL against a direct competitor of the plaintiff. *Cel-Tech* concluded: "[T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech, supra*, at pp. 186–187, fn. omitted.)

However, the Supreme Court in *Cel-Tech* made clear that its "unfairness" analysis did not relate "to actions by consumers or by competitors alleging other kinds of violations of the [UCL] such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising.'" (*Cel-Tech, supra*, 20 Cal.4th at p. 187, fn. 12.) Consequently, after the decision in *Cel-Tech*, a split of authority developed among the Courts of Appeal regarding the appropriate test for what constitutes an "unfair" business act or practice in a consumer action under the UCL. (See *Davis v. Ford Motor Credit Co.* (2009) 179 Cal.App.4th 581, 593–598 [101 Cal.Rptr.3d 697] (*Davis*).)

One line of cases applied a pre-*Cel-Tech* balancing test for determining whether a business practice is unfair, under which the court examines the practice's " ' "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . . [Citations.]" . . . [A]n "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." ' " (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718–719 [113 Cal.Rptr.2d 399] (*Smith*); see *Davis, supra,* 179 Cal.App.4th at p. 595.)

A second line of cases adopted the following test or factors for determining unfairness set forth in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(n): "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403 [48 Cal.Rptr.3d 770] (*Camacho*); see *Davis, supra,* 179 Cal.App.4th at pp. 597–598.)

A third line of cases, represented by *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845 [128 Cal.Rptr.2d 389] (*Gregory*), applied a more rigorous test for unfairness in consumer UCL actions. The *Gregory* court disagreed with the balancing test applied by courts before *Cel-Tech,* stating: "*Cel-Tech* . . . may signal a narrower interpretation of the prohibition of unfair acts or practices in *all* unfair competition actions and provides reason for caution in relying on the broad language in earlier decisions that the [*Cel-Tech*] court found to be 'too amorphous.' Moreover, where a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." (*Gregory, supra,* 104 Cal.App.4th at pp. 394–395, italics added, fn omitted.) This court has followed the *Gregory* line of cases. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1192–1193 [140 Cal.Rptr.3d 796], citing *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940 [134 Cal.Rptr.2d 101], *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147 [135 Cal.Rptr.2d 796], & *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1366 [108 Cal.Rptr.3d 682].)

 In the present case, plaintiffs have not alleged an unfair business act or practice by State Farm under any of these tests. As we discussed, State Farm's charging the subject installment fee is a legal and proper business practice that does not violate the Insurance Code or any other statute and

does not constitute a breach of the insurance contract with the policyholders who enter into the separate SFPP agreement. Requiring policyholders to pay the installment fee in exchange for the right to pay premiums in installments is not an unfair practice under *Smith* because it does not offend any established public policy, is not immoral, unethical, oppressive, unscrupulous, and is not substantially injurious to the policyholders who pay premiums in installments. The installment fee is not unfair under the *Camacho* test adopted from the Federal Trade Commission Act because it does not result in consumer injury; any harm in paying the installment fee is outweighed by the benefit to the insured of being able to pay premiums in installments instead of in large lump-sum payments; and any policyholder can avoid the "harm" by opting to pay the premium in a lump sum rather than in installments. Finally, plaintiffs have not satisfied the *Gregory* test for unfairness because to the extent their unfairness claim is tethered to legislative policies underlying sections 381 and 383.5 and the other statutes cited in their complaint, it fails because their claim that the installment fee violates those statutes fails. (*Aleksick v. 7-Eleven, Inc., supra,* 205 Cal.App.4th at p. 1185 ["When a statutory claim fails, a derivative UCL claim also fails."].)

State Farm's charging policyholders the installment fee in exchange for the right to pay premiums in installments is not an unfair business practice. The trial court did not err in sustaining State Farm's demurrer to plaintiffs' cause of action under the UCL without leave to amend.

### *STATE FARM'S APPEAL*

State Farm contends the trial court abused its discretion and violated State Farm's right to due process under the federal and state Constitutions by ordering State Farm to bear the costs of providing notice to putative class member policyholders that plaintiffs sought discovery of their contact information and service charge payment information, and in granting plaintiffs' postjudgment motion to tax those costs in the amount of $713,463.72.

### I. *Background*

Before plaintiffs moved for class certification, they served a request for production that included a request for "[a]ll documents that identify the names and last known addresses and telephone numbers of all policyholders." Plaintiffs later served a request for "[d]ocuments identifying policyholders' payment histories regarding SFPP service charges and set up fees, including the policyholder's name, address, policy number, date of billing each SFPP service charge and set-up fee, date of payment or receipt of each SFPP service charge and the set-up fee, the amount paid for the service charge and set up fee, and the number and types of policies on the SFPP account at each

billing period." State Farm objected to these discovery requests on multiple grounds, including that the requests were unduly burdensome and sought disclosure of information that is protected from disclosure under the Insurance Information and Privacy Protection Act (IIPPA) (§ 791 et seq.) and constitutional and common law rights of privacy.

Plaintiffs filed motions to compel production of the requested documents and the parties agreed to refer the motions to a discovery referee. The court appointed retired Judge Wayne L. Peterson as referee. After the parties had met with Judge Peterson numerous times and submitted briefing to him on plaintiffs' motions, Judge Peterson issued a report entitled "Findings and Supplemental Report and Recommendation."

 In his report, Judge Peterson first addressed whether production of the requested information would violate the policyholders' state constitutional right to privacy[15] under the balancing test set forth by the California Supreme Court in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35–40 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*) and *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 370–371 [53 Cal.Rptr.3d 513, 150 P.3d 198] (*Pioneer*). The Supreme Court in *Pioneer* explained the "analytical framework for assessing claims of invasion of privacy under the state Constitution" (*Pioneer, supra,* at p. 370) as follows: "First, the claimant must possess a 'legally protected privacy interest.' . . . [¶] Second, . . . the privacy claimant must possess a reasonable expectation of privacy under the particular circumstances, including 'customs, practices, and physical settings surrounding particular activities . . . .' . . . [¶] Third, . . . the invasion of privacy complained of must be 'serious' in nature, scope, and actual or potential impact to constitute an 'egregious' breach of social norms, for trivial invasions afford no cause of action." (*Id.* at pp. 370–371.)[16]

"Assuming that a claimant has met the foregoing . . . criteria for invasion of a privacy interest, that interest must be measured against other competing or countervailing interests in a ' "balancing test." ' [Citations.] 'Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests.' [Citation.] Protective measures, safeguards and other alternatives may minimize the

---

[15] The right of privacy is an "inalienable right" under article I, section 1 of the California Constitution. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977] (*Valley Bank*).)

[16] "[W]hether a legally recognized privacy interest exists is a question of law, and whether the circumstances give rise to a reasonable expectation of privacy and a serious invasion thereof are mixed questions of law and fact. [Citation.] 'If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.' " (*Pioneer, supra,* 40 Cal.4th at p. 370.)

privacy intrusion. 'For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged.' " (*Pioneer, supra*, 40 Cal.4th at p. 371.)

Applying this analysis, Judge Peterson concluded that as to the policyholders' contact information "there is good reason to believe that State Farm SFPP policyholders would not have an expectation of privacy in these circumstances but would want release of their information to counsel who are acting to assert claims on their behalf." However, as to SFPP installment payment information, Judge Peterson concluded that policyholders "may have a reasonable expectation that their personalized financial information, though limited to their SFPP payments, would not be released prior to certification of a class if their name and contact information is linked to the SFPP information. Therefore, there may be a reasonable expectation of privacy in payment information linked to names and addresses at this stage of the litigation."

Judge Peterson next addressed whether the invasion of privacy implicated by plaintiffs' discovery requests was sufficiently "serious in nature, scope, and actual or potential impact to constitute an egregious breach of social norms." He concluded that discovery of policyholders' contact information was not a breach of social norms, but that "release of the payment information when linked to identifying information could constitute a breach of social norms prior to class certification." Accordingly, as to the release of payment information, he proceeded to the balancing test that applies to a serious invasion of privacy. (*Pioneer, supra*, 40 Cal.4th at p. 371.)

Judge Peterson concluded that "[p]olicyholders' privacy interest must be balanced against the fundamental public policy of protecting consumers from unfair, deceitful and unlawful business practices, which policy underlies California's consumer protection laws. [Citation.] The importance of consumer protection alone suggests 'that the balance of opposing interests tips toward permitting access to relevant information necessary to pursue the litigation.' [Citations.] Here, permitting State Farm to withhold SFPP policyholder information will restrict plaintiff's[17] ability to enforce the consumer protection right of these same individuals."

Judge Peterson also considered the right of a civil litigant under the discovery statutes to contact witnesses needed to develop a case, and "the fairness to litigants." He stated that plaintiffs needed the SFPP payment information "to rebut State Farm's contentions concerning the feasibility of

---

[17] Judge Peterson referred to "plaintiff" in the singular although the subject discovery requests were propounded by two named plaintiffs.

determining class wide damages and restitution, to confirm the accuracy of payment data with the policyholder, and to intelligently discuss the circumstances of the particular witness. State Farm has access to this information and so should plaintiff . . . . The information sought is 'directly relevant' to plaintiff's claims and 'essential to the fair resolution' of the lawsuit."

Judge Peterson then stated that "[a]s part of the balancing analysis, courts must also consider protective measures, safeguards and other alternatives that may minimize the intrusion and assuage privacy concerns." He noted the court had entered a confidentiality order that covered the information plaintiffs sought. The order stated: "[T]he information will only be used for purposes of litigating this putative class action and will not be publicly disclosed. In addition, until a class is certified, plaintiff will contact witnesses by mail, unless and until the person indicates that phone contact is acceptable."

Under the heading "Additional Protective Measures: a Letter to SFPP Policyholders," Judge Peterson addressed the notice procedure giving rise to State Farm's appeal. He first noted *plaintiffs' arguments* that (1) under *Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807 [98 Cal.Rptr.2d 221, 3 P.3d 868] (*Connecticut Indemnity*), no additional measures were needed to protect policyholders' privacy interests;[18] (2) a letter to policyholders providing an opportunity to object to production of their contact information and installment pay data was not required; and (3) it was unnecessary to give policyholders an opportunity to object because the court "would almost certainly overrule objections, were any to be made." He further noted that plaintiffs were opposed to "an 'opt-in' or consent procedure to obtain the information linked to a policyholder's identifying information."[19]

Regarding State Farm's position, Judge Peterson stated: "State Farm wants a letter to be sent to potential class members. Relying on *Colonial Life & Accident Insurance Co. v. Superior Court* [(1982) 31 Cal.3d 785 [183

---

[18] In *Connecticut Indemnity*, a city council issued subpoenas to liability insurers of parties potentially liable for toxic contamination of groundwater for the purpose of obtaining liability coverage information, and the insurers challenged the subpoenas on grounds they violated the privacy rights of their insureds under the California Constitution and the IIPPA. (*Connecticut Indemnity, supra*, 23 Cal.4th at pp. 812, 817.) The Supreme Court did not reach the constitutional privacy issue, and as to the insurers' argument that the IIPPA prevented them from complying with the subpoenas, the court observed that disclosure of information protected by the IIPPA without notice or consent to the insured is allowed under the act when the information is sought by governmental authority pursuant to law or disclosure is otherwise permitted or required by law. (23 Cal.4th at p. 818, citing § 791.13, subds. (f) & (g).)

[19] "An 'opt-in' letter requires the recipient to manifest consent to disclosure of indentifying information before his or her name or contact information will be released to the named plaintiff. An 'opt-out' letter requires no action by the recipient unless he or she wishes to prevent disclosure of his or her identifying information." (*Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1331, fn. 2 [83 Cal.Rptr.3d 241].)

Cal.Rptr. 810, 647 P.2d 86]], State Farm argues that not only must a letter be sent to the policyholder, but in addition, the letter must be an 'opt-in' letter whereby information is produced only if the policyholder affirmatively consents."[20]

Judge Peterson concluded that "*Colonial Life* does not mandate an 'opt-in' letter and policyholder consent prior to disclosure of information covered by the IIPPA. Rather, the court noted that under . . . section 791.13 consent was *one of the ways* IIPPA permits disclosure. [Citation.] [¶] As to *Connecticut Indemnity*, . . . while the Supreme Court stated that notice and consent was not required, it did not preclude use of additional protections. The Court finds that the use of additional protections in the form of notice, objection and consent procedures may be provided in this case."

In his "Proposed Recommendations," Judge Peterson overruled State Farm's objections to the subject discovery requests and set forth the following procedure for providing policyholders notice and an opportunity to object to the discovery of their contact information: "State Farm shall send a letter to its California SFPP policyholders . . . informing them that their contact information will be produced to plaintiff, subject to their opportunity to object. . . . The letter shall enclose an objection form . . . and a pre-addressed, postage-paid return envelope. [¶] . . . [¶] Policyholders shall have 21 days from the date of the mailing of the letter to submit objections. Once this 21-day period has past [*sic*], State Farm shall provide the contact information for all those *not* submitting objections to plaintiff within five business days. [¶] The objections of policyholders will be ruled on by the Court. Once the objections are ruled upon, State Farm shall provide the contact information of those whose objections were overruled to plaintiff within five business days after the ruling becomes final . . . . [¶] The information produced responsive

---

[20] In *Colonial Life* the plaintiff representative of a decedent's estate filed an action alleging unfair claims settlement practices against the decedent's insurer, and served the company that acted as the insurer's claims adjuster with a demand to produce documents pertaining to cases handled by the adjuster's employee who had handled the decedent's claim under an accident policy. The insurer objected to production based on the IIPPA and other grounds. (*Colonial Life & Accident Ins. Co. v. Superior Court, supra*, 31 Cal.3d at p. 787.) The trial court ordered the adjuster to produce the names and addresses of all insureds whose claims for benefits had been handled by the employee in question and approved a letter to be sent by the plaintiff to those insureds, requesting their consent to the adjuster's release of their records. (*Id.* at p. 789.) Addressing the insurer's complaint that revealing information about other claimants potentially violated privacy interests protected by the IIPPA, the Supreme Court noted that under section 791.13 of the IIPPA, *one of* the exceptions to the prohibition against disclosure of personal or privileged information permits such disclosure with the written authorization of the insured, subject to certain requirements, including the requirement that the written authorization be obtained one year or less prior to the date a disclosure is sought. (§ 791.13, subd. (a).) The court observed that the notice procedure approved by the trial court "should satisfy these requirements if the authorization form, included in the letter sent to claimants, is returned within a year." (*Colonial Life, supra*, 31 Cal.3d at pp. 792–793, fn. 10.)

to this request shall be treated as confidential pursuant to the Confidentiality Order entered in this case." Regarding the request for installment payment information, Judge Peterson stated: "State Farm shall send a letter to policyholders informing that their SFPP payment information linked to their name and address will be provided only if the policyholder affirmatively consents."

Attached to Judge Peterson's report was the proposed letter to be sent to policyholders, a form for objecting to the disclosure of contact information, and a form for consenting to disclosure of SFPP payment information. The proposed letter was from plaintiffs' counsel and informed the policyholder: "Our lawsuit is about the [SFPP] service charges that State Farm collects when a policyholder pays his or her automobile insurance premiums on a monthly basis. The lawsuit alleges that State Farm improperly collected money for paying in installments. State Farm denies all wrongdoing."

State Farm filed written objections to Judge Peterson's report and recommendations, including "the portion of the proposed ruling ordering State Farm to pay for the notices sent to policyholders . . . ." Plaintiffs argued in response that the notice was not required by law but was being sent at State Farm's insistence, and therefore "State Farm should bear the cost of the unnecessary procedure as recommended by Judge Peterson."

The court issued an order overruling State Farm's objections to Judge Peterson's recommendations and adopted them with the sole modification that policyholder responses to the notice letter were not to be mailed to the court but rather to a third party to be selected by the parties. The order stated that "[r]equiring State Farm to pay for the costs of the notice is reasonable." State Farm moved for reconsideration of the order under Code of Civil Procedure section 1008, claiming there were "new and different facts" regarding the cost it would incur in providing notice of plaintiffs' discovery requests to policyholders. The court denied the motion, ruling that State Farm's evidence regarding the cost of providing notice was not a new fact because State Farm had ample opportunity to present that evidence in earlier proceedings before Judge Peterson.[21] State Farm unsuccessfully sought writ review of the order adopting Judge Peterson's recommendations in this court and the California Supreme Court.

After the court entered judgment in State Farm's favor, State Farm filed a memorandum of costs, which included costs of $713,463.72 that it incurred in sending notices to policyholders regarding the discovery of their personal information and in processing responses. Plaintiffs filed a motion to tax State

---

[21] In its appeal from the judgment, State Farm seeks review of the order adopting Judge Peterson's recommendations and the order denying its motion for reconsideration.

Farm's memorandum of costs in which they challenged State Farm's entitlement to recover costs related to the policyholder notice procedure.

The court granted plaintiffs' motion as to the notice costs, stating: "The court declines to exercise its discretion to allow State Farm to recover the costs of the policyholder notice. State Farm sought permission to send the policyholder notice of its own accord, if the court was inclined to grant the motion to compel. The court granted the motion and permission to send the policyholder notice. The policyholder notice was unnecessary, but State Farm was allowed to proceed. Since it was State Farm's intent to provide the notice, State Farm was ordered to pay for the notice. Therefore, State Farm bears the economic burden for its discretionary act."

## II. *Standard of Review*

The parties disagree on the standard of review that applies to State Farm's appeal. State Farm contends the question of whether the trial court had the authority to impose the notice-related costs on State Farm, and the related question of whether policyholder notice procedure was required by law, are questions of law subject to de novo review. Plaintiffs cite authority for the proposition that an appellate court reviews an order allowing or disallowing litigations costs in favor of a prevailing party for abuse of discretion. (*El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 617 [58 Cal.Rptr.3d 590].) Plaintiffs argue that the only statutory authority for State Farm's recovery of the notice costs is Code of Civil Procedure section 1033.5, subdivision (c)(4), which states: "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion."[22] Plaintiffs contend the court had the discretion under that statutory provision to disallow those costs and did not abuse that discretion.

State Farm's appeal brings both standards of review into play. " 'Management of discovery generally lies within the sound discretion of the trial court. [Citations.] Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court.' " (*Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762, 767–768 [21 Cal.Rptr.3d 532].) However, " ' "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of

---

[22] State Farm also argued that the notice costs were recoverable under Code of Civil Procedure section 1033.5, subdivision (c)(4), in its opposition to plaintiffs' motion to tax costs.

discretion." ' [Citation.] To the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo." (*Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1537 [27 Cal.Rptr.3d 839]; see *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 605 [3 Cal.Rptr.3d 593] [de novo review of a trial court ruling on the allowance of costs is warranted where the determination of whether the criteria for costs in a particular context have been satisfied amounts to statutory construction and a question of law].)

The critical issue in State Farm's appeal is whether the notice provided to its policyholders in this action was required by law or by court order, which are questions of law subject to de novo review. State Farm contends the notice procedure was required both by law and court order. Plaintiffs contend the policyholder notice was not mandated by law or the court; rather, the court merely *allowed* State Farm to provide the notice because State Farm insisted on it. If State Farm was required by law to provide notice to its policyholders before complying with plaintiffs' discovery requests, it was an abuse of discretion to impose the cost of providing that notice on State Farm. Similarly, regardless of whether the notice was required by law, if the *court* required the notice to be given, it was an abuse of discretion to impose the cost of providing it on State Farm. However, if the notice procedure was not required by law or court order, but rather was authorized by the court only because State Farm insisted on it, as plaintiffs contend and the court found in ruling on plaintiffs' motion to tax costs, the court acted within its discretion in ordering State Farm to bear the notice-related costs and disallowing State Farm's recovery of those costs as prevailing party. We conclude that the notice State Farm gave its policyholders was required both by law and the court's order adopting the notice procedure that Judge Peterson prescribed.

## III. *The Notice Procedure Was Required by Law*

State Farm contends the privacy notice it sent to its policyholders was required by the California Constitution and the IIPPA. We agree that the notice procedure prescribed by Judge Peterson and followed by State Farm was necessary to protect the policyholders' privacy rights under the California Constitution.

As to the discovery of the policyholders' indentifying information, we conclude that the opt-out notice procedure Judge Peterson recommended and the court ordered was constitutionally required, notwithstanding Judge Peterson's statement that there was "good reason to believe that State Farm SFPP policyholders would not have an expectation of privacy in these circumstances but would want release of their information to counsel who are acting to assert claims on their behalf." In *Pioneer*, the trial court ordered that before the

names of customers who had bought defective DVD players from the defendant retailer and complained to the defendant could be disclosed to the plaintiff representative of a putative class, a letter had to be sent to those customers informing them that their identifying information would be disclosed to plaintiff's counsel unless they returned a written objection. (*Pioneer, supra,* 40 Cal.4th at p. 365.) The Supreme Court decided the trial court had not abused its discretion by requiring an "opt-out" notice letter instead of an "opt-in" letter. (*Id.* at pp. 371–375.) Similar to Judge Peterson's finding that the policyholders in this case "would not have an expectation of privacy in these circumstances but would want release of their information to counsel who are acting to assert claims on their behalf," the Supreme Court concluded that the customers in *Pioneer* had a reduced expectation of privacy in their identifying information and that the trial court could properly find that release of that information to a class action plaintiff was not a serious invasion of privacy. (*Pioneer, supra,* 40 Cal.4th at p. 372.) However, the Supreme Court qualified the latter conclusion by stating, "the trial court could properly find that no serious invasion of privacy would ensue if release of complaining customer identifying information was limited to the named plaintiff in a class action . . . , *following written notice to each customer that afforded a chance to object.*" (*Pioneer, supra,* 40 Cal.4th at p. 372, italics added.)

The *Pioneer* court elaborated that "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations.] Such disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches." (*Pioneer, supra,* 40 Cal.4th at p. 373.) However, the *Pioneer* court's approval of the discovery of contact information in the case before it was largely based on the fact that "the order . . . imposed important limitations, requiring written notice of the proposed disclosure to all complaining Pioneer customers, giving them the opportunity to object to the release of their own personal identifying information. *Under these circumstances,* the court's order involved no serious invasion of privacy." (*Ibid.,* italics added.)

■ This language from *Pioneer* supports the proposition that even as to generally discoverable identifying information for potential class members in a putative class action, *some* form of notice and opportunity to object to disclosure to a third party is required to protect the potential class members' privacy rights under the California Constitution. (See *Lee v. Dynamex, Inc., supra,* 166 Cal.App.4th 1325, 1338 (*Lee*) [trial court abused its discretion by denying the motion to compel disclosure of potential class members' names and addresses through the use of an opt-out procedure]; *Belaire-West*

*Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 556–557 [57 Cal.Rptr.3d 197] [opt-out notice procedure was properly used in a putative class action to protect the privacy interests of current and former employees of the defendant whose contact information was requested in precertification discovery for the purpose of identifying potential class members]; *Medlock v. Taco Bell* (E.D.Cal., Aug. 11, 2008, No. CIV F 07-1314 OWW DLB) 2008 WL 3553147 [opt-out notice procedure was necessary to protect the privacy of putative class members whose identities were discoverable]; *Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772 [40 Cal.Rptr.3d 575] [discovery order designed to find person willing to substitute as the representative plaintiff in place of named plaintiff required opt-in notice to potential class members].)[23] Accordingly, we conclude that although release of the policyholders' indentifying information to plaintiffs here was not a serious invasion of privacy, it was sufficiently invasive to warrant providing the policyholders notice and an opportunity to object.

 Even if the trial court in the reasonable exercise of its discretion arguably could have allowed the discovery of the policyholders' identifying information without the opt-in notice that Judge Peterson prescribed, we conclude that notice to policyholders and an opportunity to object unquestionably was required for plaintiffs' requested discovery of the policyholders' SFPP payment history information. The inalienable right to privacy under the California Constitution "extends to one's confidential financial affairs . . . ." (*Valley Bank, supra,* 15 Cal.3d at p. 656.) In civil cases courts must "indulge in a careful balancing of the right of civil litigants to discover relevant facts, on the one hand, with the right of [individuals] to maintain reasonable privacy regarding their financial affairs, on the other." (*Id.* at p. 657; see *Pioneer, supra,* 40 Cal.4th at p. 372 [details regarding one's personal finances constitutes a "particularly sensitive" disclosure].) Thus, the Supreme Court in *Valley Bank* held that before a bank discloses its customers' confidential financial information in civil discovery proceedings, "the bank must take reasonable steps to notify its customer of the pendency and nature of the proceedings and to afford the customer a fair opportunity to assert his interests by objecting to disclosure, by seeking an appropriate protective order, or by instituting other legal proceedings to limit the scope or nature of the matters sought to be discovered." (*Valley Bank, supra,* 15 Cal.3d at p. 658.)

---

[23] We recognize that in *Crab Addison, Inc. v. Superior Court* (2008) 169 Cal.App.4th 958 [87 Cal.Rptr.3d 400] (*Crab*), the same court that decided *Lee* also decided that the trial court in *Crab* properly ordered a defendant to disclose contact information of its present and former employees who were putative class members without requiring notice or other protection of their privacy rights. We decline to follow *Crab* to the extent it conflicts with our conclusion that the discovery of identifying information for potential class members in a putative class action requires notice to the potential class members and an opportunity to object to disclosure.

Judge Peterson recognized the heightened privacy interest in financial information in his application of the *Hill/Pioneer* balancing test to plaintiffs' request for policyholders' payment history information. He concluded that policyholders may have a reasonable expectation of privacy in the "financial information" regarding their installment payment histories, and although he viewed as a "close call" the question of whether the release of that information would amount to a "breach of privacy so serious as to constitute an egregious breach of social norms, especially in light of the Confidentiality Order that will limit further disclosure and use of the information," he found that "because the information is financial information and . . . the case is in a pre-certification stage, . . . release of the payment information when linked to identifying information could constitute a breach of social norms prior to class certification."

We agree with Judge Peterson's essential analysis, disregarding his use of tentative language such as: "[policyholders] *may* have a reasonable expectation that their personalized financial information, though limited to their SFPP payments, would not be released prior to certification of a class"; "there *may* be a reasonable expectation of privacy in payment information linked to names and addresses at this stage of the litigation"; and "release of the payment information when linked to identifying information *could* constitute a breach of social norms prior to class certification." (Italics added.) Following the reasoning of *Valley Bank*, we conclude that plaintiffs' discovery of the putative class members' payment histories regarding SFPP service charges and setup fees required that State Farm take reasonable steps to notify its policyholders "of the pendency and nature of the proceedings and to afford [them] a fair opportunity to assert [their] interests by objecting to disclosure . . . ." (*Valley Bank, supra*, 15 Cal.3d at p. 658.)

In light of our conclusion that the privacy notice State Farm sent to its policyholders was required by the California Constitution, we need not address whether it was required under the IIPPA.

### IV. *The Notice Procedure Was Required by Court Order*

The meaning of a court order or judgment is a question of law within the ambit of the appellate court. (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205 [28 Cal.Rptr.2d 822].) "The true measure of an order . . . is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.] In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's

intention in the making of the same." (*Roraback v. Roraback* (1940) 38 Cal.App.2d 592, 596 [101 P.2d 772]; see *Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 77 [26 Cal.Rptr.3d 735].)

We construe Judge Peterson's recommended order, which the trial court adopted, as requiring State Farm to follow the notice procedure set forth in the order. Judge Peterson noted in his recommended order that State Farm "wants a [notice] letter to be sent to potential class members," but he never expressly stated that State Farm was not *required* to use the notice procedure or that he was merely *allowing* State Farm to send notice letters because it wanted to. Nor did Judge Peterson state that the confidentiality order alone was sufficient to protect the policyholders' privacy interests. Although Judge Peterson ambiguously stated, as a *finding*, that "the use of additional protections in the form of notice, objection and consent procedures *may* be provided in this case" (italics added), in setting forth the notice procedure, he stated that "State Farm *shall* send a letter to its California SFPP policyholders . . . informing them that their contact information will be produced to plaintiff, subject to their opportunity to object" (italics added) and that "State Farm *shall* send a letter to policyholders informing that their SFPP payment information linked to their name and address will be provided only if the policyholder affirmatively consents." (Italics added.) "The ordinary meaning of 'shall' . . . is of mandatory effect, while the ordinary meaning of 'may' is purely permissive in character." (*Larson v. State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276 [33 Cal.Rptr.2d 412]; see Code Civ. Proc., § 1235.060; Gov. Code, § 14.) Thus, the use of "shall" in the section of the order setting forth the specific notice procedure that State Farm was to follow supports the construction that the notice procedure was mandatory rather than permissive.

Notwithstanding the ambiguity in Judge Peterson's recommended order as to whether the notice procedure was required, as opposed to merely *allowed*, his directive that policyholders be given opt-in notice regarding disclosure of their SFPP payment information further compels the conclusion that the order *required* notice to policyholders, at least as to that disclosure. We must reject a construction of the order that leads to an illogical or absurd result. (See *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1478 [77 Cal.Rptr.2d 479]; *Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 142 [65 Cal.Rptr.2d 580, 939 P.2d 1280] [statutory construction].) It would be illogical to deem notice to be merely permissive, yet require a policyholder receiving it to affirmatively consent—i.e., "opt in"—before his or her personal information could be disclosed to plaintiffs. To construe the order in that way would mean that State Farm was free to disclose a policyholder's payment information to plaintiffs without giving the policyholder any notice or opportunity to object,

but was inconsistently *prohibited* from disclosing that information without the policyholder's affirmative consent if it elected to give notice that was not required.

Moreover, the actual notice letter approved by the court, which was sent to policyholders on plaintiffs' counsel's letterhead, reflects the parties' and the court's understanding that the notice was mandatory rather than permissive. After setting forth the policyholder contact and payment history information that plaintiffs were requesting, the notice letter stated: "The Court has *ordered* State Farm to provide us this information subject to the following conditions and procedures . . . ." (Italics added.) Considering the language of Judge Peterson's recommended order in its entirety and the surrounding circumstances, we construe the order as requiring State Farm to use the notice procedure that Judge Peterson prescribed.

### V. *The Court Abused Its Discretion in Disallowing State Farm's Recovery of the Notice Costs*

A cost item that is not identified in Code of Civil Procedure section 1033.5, subdivision (a), or subdivision (b), may be awarded in the trial court's discretion under Code of Civil Procedure section 1033.5, subdivision (c)(4), if it is reasonably necessary to the conduct of the litigation. (Code Civ. Proc., § 1033.5, subd. (c)(2); *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1558 [47 Cal.Rptr.3d 206].)[24] "When a party demands discovery involving significant 'special attendant' costs beyond those typically involved in responding to routine discovery, the demanding party should bear those costs." (*San Diego Unified Port Dist. v. Douglas E. Barnhart, Inc.* (2002) 95 Cal.App.4th 1400, 1405 [116 Cal.Rptr.2d 65].)

The costs State Farm incurred in providing its policyholders notice of plaintiffs' discovery demands were significant special attendant costs beyond those typically involved in responding to routine discovery, and they were necessary to the conduct of the litigation because the notice procedure State Farm used was required by law and court order. Therefore, we conclude it was an abuse of discretion to order State Farm to bear the costs of the notice procedure and not award those costs to State Farm as a prevailing

---

[24] "Code of Civil Procedure section 1033.5, subdivision (c)(2)'s requirement that the cost item be reasonably necessary to the conduct of the litigation is applicable to all items allowable as costs, whether awarded under [Code of Civil Procedure] section 1033.5, subdivision (a), or [Code of Civil Procedure] section 1033.5, subdivision (c)(4), as is the requirement that '[a]llowable costs shall be reasonable in amount.' ([Code Civ. Proc.,] § 1033.5, subd. (c)(3).) [Code of Civil Procedure s]ubdivision (c)(2), in other words, is a *limitation* on recoverable costs, not an *authorization* for an award of costs not otherwise permitted by statute." (*Seever v. Copley Press, Inc., supra,* 141 Cal.App.4th at p. 1559, fn. 5.)

party. As State Farm acknowledges in its reply brief, the issue of the reasonableness of the amount of costs that State Farm claims for the notice procedure should be determined in the first instance by the trial court. (*Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1380 [29 Cal.Rptr.3d 306].) Accordingly, we remand the matter for that determination.

## DISPOSITION

The judgment is affirmed. The postjudgment order granting plaintiffs' motion to tax costs is reversed. The matter is remanded to the trial court with directions to determine the reasonable amount of costs incurred by State Farm in providing notice to policyholders that plaintiffs sought discovery of their contact information and installment fee payment information, and to award those costs to State Farm as the prevailing party. State Farm is awarded its costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.